**RECEIVED**

**JANUARY 25, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**08 C 579**

| | |
|---|---|
| **JAMES T. SMITH, ROBERT TERRY, PAUL BROWN, AND HARVEY EVERETT,** )<br>)<br>)<br>) | |
| Plaintiffs, ) | |
| ) | |
| -against- ) | **COMPLAINT** |
| ) | |
| ) | **JUDGE LEFKOW**<br>**MAGISTRATE JUDGE NOLAN** |
| **INVSCO GROUP, LTD., ADMIRAL SECURITY SERVICES, INC., AND EDY KLEIN,** )<br>)<br>) | |
| ) | |
| Defendants. ) | Jury Trial Demanded |
| ) | |

NOW COME Plaintiffs **James T. Smith, Robert Terry, Paul Brown,** and **Harvey Everett**, by their attorney, David Porter, Esq., as and for their Complaint against Defendants **Invsco Group, Ltd., Admiral Security Services, Inc.,** and **Edy Klein**, alleging as follows:

## JURISDICTION AND VENUE

1.  This is a civil action seeking monetary damages and affirmative relief based upon the Defendants' violation of 42 U.S.C. Section 1981 and Title VII of the Civil Rights Act of 1964, as amended by, inter alia, the Civil Rights Act of 1991, for the Defendants' discrimination against, and harassment of, the Plaintiffs due to their race (black), and for the Defendants' retaliation against the Plaintiffs due to their internal and external complaints of

discrimination (and based on their support of the discrimination complaints of their fellow black Doormen) in connection with:

    a.    the Defendants' having subjected the Plaintiffs to disparate and adverse terms and conditions of employment (including but not limited to such issues as the Plaintiffs: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines;  being subjected to repeated verbal hostilities, abuses, and threats;  being subjected to poorer, and changed, shift times, schedules and fill-in opportunities;  being subjected to restrictions on outside work opportunities;  having new requirements added to the Plaintiffs' continuing their employment;  having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and more);  and

    b.    the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and with two of the Plaintiffs having thusfar also been terminated from Admiral).

2.  Jurisdiction of this Court over this controversy is invoked under 28 U.S.C. Section 1331 and 28 U.S.C. Sections 1343 (3) and (4).

3.  Venue is proper pursuant to 28 U.S.C Section 1391.

4.  All conditions precedent to commencing the Title VII claims herein have been satisfied in that:  a.  Plaintiffs Smith and Brown have filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC");  b.  the EEOC has issued Right-to-Sue Letters (dated October 26, 2007 to Paul Brown, and dated October 29, 2007 and November 20, 2007 to Robert T. Smith);  and  c.  Plaintiffs Smith and Brown bring this action within ninety days of their receipt of the aforesaid Right-to-Sue Letters.

**THE PARTIES**

5.  The Plaintiffs, at all times hereinafter mentioned, were and still are residents and domiciliary of the County of Cook, State of Illinois, specifically residing at the following addresses:

James Smith     -     16341 Cottage Grove, South Holland, Illinois 60473

Robert Terry     -     4448 W. Thomas, Chicago, Illinois 60651

Paul Brown     -     2404 E. 77th Street, Chicago, Illinois 60649

Harvey Everett   -     7130 Ingleside, Chicago, Illinois 60619


6.  Upon information and belief, Defendant Invsco Group, Ltd. (hereinafter "Invsco") is a domestic corporation authorized to do business in the state of Illinois, and is engaged in an industry affecting commerce.  Defendant Invsco has employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding year.  Defendant Invsco is an "employer" as required by Title VII.  Defendant Invsco's principle place of business is located in the County of Cook at 1212 North LaSalle Street, Chicago, Illinois 60610.

7.  Upon information and belief, Defendant Admiral Security Services, Inc. (hereinafter "Admiral") is a domestic corporation authorized to do business in the state of Illinois, and is engaged in an industry affecting commerce.  Defendant Admiral has employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding year.  Defendant Admiral is an "employer" as required by Title VII.  Defendant Admiral's principle place of business is located in the County of Cook at 5940 West Touhy Avenue, Suite 130, Niles, Illinois 60714.

8.   Defendant Edy Klein is, and was at all material times, the Property Manager for Defendant Invsco at 440 N. Wabash, Chicago, Illinois 60611.  She is sued in her individual capacity.

9.   Defendant Invsco has employed Edy Klein at all times material hereto.  Defendant Invsco is responsible for the acts of Edy Klein while she was acting within the scope of her employment.

10.   During all relevant times, Defendant Invsco, Admiral, and Edy Klein were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and, therefore, were and are "employers" as defined under the federal statutes relied upon herein.


**BACKGROUND**


11.   All of the Plaintiffs are black individuals and have worked, or are still working, as Doormen at 440 N. Wabash, Chicago, Illinois 60611 (hereinafter "Plaza 440").

12.   The Plaintiffs commenced their employment as Doormen at Plaza 440 in or about the following dates:  James T. Smith  -  March 8, 1996;   Robert Terry  -  October 9, 1997;  Paul Brown  -  November, 1991;  and Harvey Everett  -  November, 2002.

13.   Defendant Invsco took over ownership and management of Plaza 440 in or about January, 2005, at which time Defendant Invsco became the employer of all of the Plaintiffs.

14.   The Plaintiffs, at all times relevant hereto are, or have been, members of the AFL-CIO, Service Employees Local No. 1.

15.  The maintenance staff at Plaza 440 are also union employees, and such maintenance staff temporarily perform the Doormen duties primarily in connection with relieving the Doormen for breaks or, if there is a Doorman shortage, for a particular shift.

16.  While the Doorman positions at Plaza 440 have been filled overwhelmingly with black individuals (except for an occasional white employee, who is treated better than the Plaintiffs), the maintenance staff at Plaza 440 have been comprised overwhelmingly with white and non-black employees.

17.  During the Plaintiffs' employment at Plaza 440 and with the Defendants, the Plaintiffs have had good to excellent work performance, with the Plaintiffs having been good, hard-working, and productive employees.  The Plaintiffs also had good to excellent work records prior to Defendants Invsco and Edy Klein coming to be in charge of Plaza 440.

18.  On an ongoing and repeated basis commencing in or about 2006 and continuing to the present time, Defendants Invsco and Edy Klein have subjected the Plaintiffs to extremely disparate, adverse, and hostile treatment, and a hostile work environment, as compared to how similarly situated white and non-black employees (primarily, but not limited to, the white and non-black maintenance employees and a white Doorman) were treated by such Defendants, with regards to  -  amongst other things  -  the following:

   a.    issuing the Plaintiffs repeated unwarranted and outrageous written warnings and suspensions, and with such disciplines based on deliberately misleading and falsified claimed facts;

   b.    issuing the Plaintiffs overly harsh disciplines;

   c.    subjecting the Plaintiffs to repeated verbal hostility, abuse and threats (which among other things have placed the Plaintiffs in fear of their persons as well as in fear of losing their employment);

   d.    passing over a more senior part-time/ fill-in black Doorman (Perry Moon) for an available full-time position, as well as irregularly

passing him over for fill-in opportunities, in favor of a white individual (Joe Colletti);

e.    repeatedly allowing a white Doorman (Joe Colletti) preferential treatment as compared to the Plaintiffs with regards to, amongst other things, permitting him to leave early from his shift (and have him be relieved by maintenance staff rather than by a Plaintiff Doorman) so that he could get to his other job on time;  granting him fill-in time; changing his schedule to his advantage;

f.    criticizing and accusing the Plaintiffs of using their sick time and vacation time strategically to enable other Doormen to receive overtime (which was not the case), but with the maintenance staff having had the same usage practices of their sick time and vacation time yet the Defendants not having similarly criticized or accused the maintenance staff of abusing such time;  and

g.    no longer permitting the Plaintiffs to perform side-jobs for the Plaza 440 tenants on the Plaza 440 property (yet permitting white and non-black employees to do so).

This is, in part, discussed in greater detail within a group written internal discrimination complaint dated March 22, 2007, annexed hereto at Exhibit "A".

19.  As a result of such aforesaid repeated and ongoing discriminatory abuses as have been listed above, commencing in or about March, 2007 the Plaintiffs began making internal and external discrimination complaints (and commenced supporting the discrimination complaints of their fellow black Doormen).

20.  In late March, 2007, and as a result of being subjected to repeated racial discrimination, racial harassment, and a racially hostile work environment, in part described above, the Plaintiffs as a group made and delivered a 2-page written internal discrimination complaint against Defendants Invsco and Edy Klein, dated March 22, 2007 (which was signed by all of the Plaintiffs, with a copy being annexed hereto at Exhibit "A").

21.  Defendants Invsco and Edy Klein became aware, and were enraged, by the Plaintiffs' complaints of discrimination, and they endeavored to retaliate against the Plaintiffs for same, and thereafter they then escalated their abusive treatment of the Plaintiffs.

22.  In or about May, 2007, and shortly following the Plaintiffs having made (and expressed support for) their internal complaints of discrimination against Defendants Invsco and Edy Klein, said Defendants in retaliation for same took steps towards, and then acted, to terminate each of the Plaintiffs from their employment with Invsco and transferred the Plaintiffs' employment over to Defendant Admiral (but with Defendants Invsco and Edy Klein continuing to have significant input in, and continuing to manipulate and control, the Plaintiffs' employment conditions, disciplines, and terminations).  This was done with a clear goal by Defendants Invsco and Edy Klein, along with the complicity and active participation of Defendant Admiral, of harassing the Plaintiffs and ultimately attempting to terminate all or most of the Plaintiffs from their employment at the Plaza 440 location  -  which retaliatory goal has largely succeeded.  This is discussed in greater detail below.

23.  The Defendants' claimed reasons for terminating the Plaintiffs' employment with Invsco and having their employment transferred to Admiral was that the Plaintiffs would be given more and better training, and that the Plaintiffs allegedly would receive new uniforms -  but none of that has occurred (with this further showing that the Defendants' claimed reasons for such terminations and transfer to Admiral were false and pretextual, with their instead doing this for discriminatory and retaliatory reasons).

24.  The Defendants, by, through, and in connection with their termination of the Plaintiffs' employment and their transferring the Plaintiffs' employment from Defendant

Invsco to Defendant Admiral, caused the Plaintiffs to suffer material adverse actions in part as follows:

    a.    the Defendants required the Plaintiffs to apply, and get approved, for PERC (Permanent Employee Registration Card) cards, which was an additional condition of employment. The Plaintiffs had not previously been required to have PERC cards in their employment as Doormen for Defendant Invsco;

    b.    the Defendants unnecessarily required the Plaintiffs to get approved for PERC cards before allowing the individual Plaintiffs to work for Defendant Admiral, thereby resulting in Plaintiffs James Smith and Paul Brown being held out of work, and missing approximately 2-4 weeks of pay while waiting for approval for their PERC cards. In this regards it should also be noted that:

        • Under Section 1240.520 of the Illinois Administrative Code the Plaintiffs under Section e(3) were exempt from the requirement of obtaining a PERC card, and further under Section b even had they not been exempt (which they were) the Defendants at a minimum could have also employed them in a temporary capacity;

    c.    the Defendants made the Plaintiffs' employment much more difficult, and contributed to the Plaintiffs being subjected to a more racially and retaliatorily hostile work environment (to which white and non-black employees, and employees who had not complained of discrimination were not subjected) by, amongst other things:

        i.    deactivating their key cards, which resulted in the Plaintiffs being prevented access to the card reader doors to the alley and rear lobby of the building and to the elevators;

        ii.    taking away their key cards (different from the above) that had been used to access and leave the attached garage, as a result of which whenever the Plaintiffs would want to drive into the garage or drive out of the garage (for example at the beginning or end of their shifts) the Plaintiffs would need to call the maintenance staff and wait for the maintenance staff to come and let them into/out of the garage;

        iii.    the Plaintiffs were required to sign a document that they would not use the bathrooms on the 8th floor, and the Plaintiffs were not permitted to use the bathrooms on the 8th floor (notably, maintenance staff and other Doormen/ Security Guards from Admiral routinely used, and were permitted to use, those bathrooms)

iv. the Plaintiffs were subjected to, and required to sign, an employee manual/ handbook, and another document, that imposed new and additional conditions and requirements to the Plaintiffs' employment;  and

v. the Defendants changed the Plaintiffs' work schedules (without any stated reason), and when Plaintiffs complained the Defendants falsely claimed that the Plaintiffs had agreed to such changes and not opposed the shift change (which was not the case) and the Defendants also advised in a harsh manner that the Plaintiffs were required to accept the new schedule or they would be out of a job;

vi. the Defendants required the Plaintiffs to do the security rounds of walking and inspecting the garage looking for dangerous situations (which is what the Plaintiffs did not need to do prior to Admiral coming in, and which were duties that the Defendants did not require to be performed of the other employees of Admiral, who worked at Plaza 440 but not complained of discrimination);  and

d.     although the Plaintiffs' job titles remained as Doormen (that they had held for many years) there was ambiguity by the tenants and public as to whether the Plaintiffs were Doormen or Security Guards, and there was less prestige for the Plaintiffs, as a result the Plaintiffs now instead working for a security guard company (Admiral Security Services), the Plaintiffs being required to obtain PERC cards and perform security rounds in the garage, by the above-listed restrictions on their movement, and by Admiral using security guards to fill in for open Doormen shifts.

25. Although Defendants Invsco and Edy Klein caused the Plaintiffs' employment, as provided above, to be terminated from Invsco and then transferred to Admiral, Defendant Admiral verbally and in a writing dated June 1, 2007 (entitled "General Instructions") directed that the Plaintiffs still work for Invsco and were to always follow the direct instructions of the Building Manager, Defendant Edy Klein.  In this regards see Exhibit "B".

26. Defendants Invsco and Edy Klein acted covertly to hide their continued, and escalated, discrimination and retaliation against the Plaintiffs behind, and through, their having Admiral be the Plaintiffs' direct employer.

27. From the time Admiral became the Plaintiffs' employer in or about June, 2007 the racial discrimination, racial harassment, racially hostile work environment, and retaliation being committed against the Plaintiffs by Defendants Invsco, Admiral, and Edy Klein, greatly escalated, with the Defendants making it clear that the Plaintiffs were not wanted at Plaza 440 and that the Defendants were going to take purposeful steps to cause the Plaintiffs' employment to be terminated. In this regards see, in part, the following:

    a.    much of the disparate, hostile, and adverse conduct that the Plaintiffs were being subjected to referenced above in paragraph 18 continued, and even increased in severity and outrageousness (particularly with regards to disciplines and harsh and hostile language);

    b.    the Plaintiffs began being subjected to the conduct referenced in paragraph 24;

    c.    the Defendants actively engaged in surveillance of the Plaintiffs, looking for grounds to discipline and terminate the Plaintiffs' employment, but with the Defendants largely, and repeatedly, ignoring and disregarding the repeated abuses of similarly situated white and non-black employees as well as the repeated abuses of black employees who had not complained of discrimination;

    d.    the Defendants actively attempted to disparately and negatively paper, and distort, the Plaintiffs' personnel files with unwarranted and excessive disciplines towards attempting to provide a pretextual justification for their termination of the individual Plaintiffs' employment; and

    e.    within a few months of Defendant Admiral being brought in to Plaza 440 the Defendants terminated, and caused to be terminated, the longterm employment of two of the four Plaintiffs (Robert Terry and Paul Brown) from their employment at Plaza 440, with this occurring for clearly pretextual, racially discriminatory, and retaliatory reasons.

28. On or about June 5, 2007 Robert Terry filed an IDHR Charge of Discrimination against Defendant Invsco. On or about May 21, 2007 and June 6, 2007 Plaintiff James T. Smith filed IDHR Charges of discrimination against Defendant Invsco. On or about June 7,

2007 and August 2 and 8, 2007 Plaintiff Brown filed IDHR Charges of race discrimination

and retaliation against the Defendants.

29.  Beyond the above, some additional examples, but not all, of the Defendants'

extremely disparate, adverse, and hostile treatment of the Plaintiffs, and the hostile work

environment that the Plaintiffs have been subjected, as compared to how similarly situated

white and non-black employees  -  as well as employees who did not complain of race

discrimination  -  were treated, also include the following:

**James T. Smith**

a.      the Defendants actively engaged in issuing him repeated, unwarranted, and
exaggerated, write-ups and a 3-day suspension;

b.      on or about March 20, 2007 the Defendants made a clearly unwarranted
allegation against him that he had committed sexual harassment  -  which was
clearly not the case  -  with the Defendants disciplining him for this.  By
contrast, when white and non-black employees, and employees who had not
complained of discrimination made abusive, sexually harassing, or racially
harassing statements to individuals at Plaza 440  -  which occurred repeatedly
-  the Defendants repeatedly turned a blind eye to this, and even when it was
further brought to their attention they repeatedly did not issue disciplines and
did not suspend such offending individuals;

c.      the Defendants verbally threatened him;

d.      the Defendants purposely disregarded his Lead Doormen position;

**Robert Terry**

a.      the Defendants actively engaged in issuing him repeated, unwarranted, and
exaggerated, write-ups and suspensions;

b.      comencing in or about November, 2006 and continuing to in or about June,
2007 the Defendants changed his shift, repeatedly requiring him to work back-
to-back shifts, but refused to pay him swing shift money that was required to
be paid and that was paid to other individuals;

c.      on or about January 15, 2008 the Defendants suspended him pending
termination, and then subsequently terminated his employment effective

January 16, 2008, and caused him to be terminated, from his 10-year employment at Plaza 440 for a clearly false, pretextual reason, and based on false claimed facts that the Defendants knew and/or reasonably should have known were false and that did not warrant either discipline or termination;

d.     the Defendants required him to travel to Admiral's Niles offices for his January 25, 2008 grievance meeting with regard to the issue of his termination (whereas in the past the grievance meetings had been held at Plaza 440);


## Paul Brown

a.     on or about July 19, 2007 the Defendants looked at a week's worth of videotapes in an attempt to catch Plaintiff Brown sleeping, while for a long period of time Defendants purposely and knowingly ignored and disregarded that another Doorman (Lawrence Littlejohn), who had not complained of discrimination, was repeatedly sleeping on the job.  The Defendants were not writing up Mr. Littlejohn for this, and only belatedly acted to terminate such individual's employment after several months of such repeated sleeping on the job by Mr. Littlejohn, and after the tenants were repeatedly complaining;

b.     on or about August 5, 2007, and despite his good work-record, the Defendants without valid justification quickly terminated him, and caused him to be terminated, from his almost 17-year employment for a false, exaggerated, and pretextual reason and based on false claimed facts that the Defendants knew were false (with a non-black similarly situated employee who had not complained of discrimination, and who was directly involved in the matter, and had engaged in that same conduct and more that was used by the Defendants as a basis to terminate Plaintiff Brown's employment, not having had his employment terminated by the defendants);


## Harvey Everett

a.     in or about July 5, 2006 the Defendants, without valid justification, issued him a written discipline in connection with a lock-up form, in which the address was incorrect  -  but where the apartment number had been rewritten and such writing was clearly not his handwriting;

b.     when Defendant Admiral came in the Defendants changed his schedule from Saturdays 7am – 3 pm to instead be on Mondays 11 pm – 7 am.  This caused him a hardship because he had a full-time job, and it was very difficult to get to such job with this schedule.  When he told this to the Defendants they advised that he had to take this new schedule or he would be out of a job;

30. The Defendants' conduct toward the Plaintiffs was racially discriminatory, racially harassing, constituted a hostile work environment, and was retaliatory for the Plaintiffs' complaints of discrimination (as well as retaliatory for the Plaintiffs' support of the discrimination complaints of their fellow black Doormen). To have treated such hardworking and productive black employees in such an adverse and hostile manner sends a terrible message as to the type of company that Defendants Invsco and Admiral are in the Chicago area and in Illinois.

31. Based on the foregoing, and more, the Plaintiffs charge Defendants Invsco, Admiral, and Edy Klein with unlawful discriminatory practices, harassment, and retaliation, relating to the Plaintiffs' employment, the terms and conditions of their employment, and the terminations of their employment, because of their race (black) and because of their complaints of discrimination and their support of the discrimination complaints of their fellow black Doormen.

## AS AND FOR A FIRST CAUSE OF ACTION

(42 U.S.C. 1981   -   race discrimination)
(brought by all 4 Plaintiffs against all 3 Defendants)

32.  The Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

33.  The Plaintiffs are/were union employees of Defendants Invsco and Admiral, with the Plaintiffs' employment relationship with the Defendants having been created/guided by a written contract of indefinite term, and with the contractual relationship having incorporated certain terms and conditions from Defendants' employment policies and employment manuals and the collective bargaining agreement (i.e.  -  non-discrimination, seniority, work-rules, etc.).

34.  The Plaintiffs had and have a contractual relationship with Defendants Invsco and Admiral, in connection with their employment, within the meaning of 42 U.S.C. Section 1981.

35.  Defendants Invsco, Admiral, and Edy Klein have intentionally subjected the Plaintiffs to unequal and discriminatory treatment, and discriminated against, and harassed, the Plaintiffs based upon their race (black), in the terms and conditions of their employment (including but not limited to being repeatedly issued unwarranted, outrageous, and overly harsh disciplines;  being subjected to repeated verbal hostilities, abuses, and threats;  being subjected to poorer, and changed, shift times, schedules and fill-in opportunities;  being subjected to restrictions on outside work opportunities;  having new requirements added to the Plaintiffs' continuing their employment;  having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and more), and in connection with the Defendants'

termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated

from Invsco and with two of the Plaintiffs having thusfar also been terminated from

Admiral), all in violation of 42 U.S.C. Section 1981.

36.  By reason of the Defendants' discrimination against the Plaintiffs, the Plaintiffs

have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation

and mental anguish, all to their damage.

37.  Further, said actions on the part of the Defendants were intentional, willful, and

malicious conduct and/or in reckless disregard for the Plaintiffs' rights as secured by 42

U.S.C. Section 1981, as amended by the Civil Rights Act of 1991, giving rise to punitive

damages.


## AS AND FOR A SECOND CAUSE OF ACTION

(42 U.S.C. 1981   -   racial harassment and racially hostile work environment)
(brought by all 4 Plaintiffs against all 3 Defendants)


38.  The Plaintiffs repeat and reallege each and every allegation set forth above with

the same force and effect as if more fully set forth hereat.

39.  Defendants Invsco, Admiral, and Edy Klein by their actions and inactions have

caused and created a longterm racially hostile work environment that unreasonably interfered

with the terms and conditions of the Plaintiffs' employment and the Plaintiffs' performance

of their job, and that created an unreasonably racially hostile and coercive working

environment, in connection with, inter alia, being repeatedly issued unwarranted, outrageous,

and overly harsh disciplines;  being subjected to repeated verbal hostilities, abuses, and

threats;  being subjected to poorer, and changed, shift times, schedules and fill-in opportunities;  being subjected to restrictions on outside work opportunities;  having new requirements added to the Plaintiffs' continuing their employment;  having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday;  and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and with two of the Plaintiffs having thusfar also been terminated from Admiral);  and more;  all in violation of 42 U.S.C. Section 1981, as amended by the Civil Rights Act of 1991.

40.  The Defendants' actions subjected the Plaintiffs to a repeated and longterm racially hostile work environment in violation of 42 U.S.C. section 1981, as amended by the Civil Rights Act of 1991.

41.  By reason of the Defendants' actions in intentionally subjecting the Plaintiffs to racial harassment, and a racially hostile work environment, the Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

42.  Further, said actions on the part of the Defendants were intentional, willful, and malicious conduct and/or in reckless disregard for the Plaintiffs' rights as secured by 42 U.S.C. Section 1981, as amended by the Civil Rights Act of 1991, giving rise to punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

(42 U.S.C. 1981  -  retaliation)
(brought by all 4 Plaintiffs against all 3 Defendants)

43.  The Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

44.  Defendants Invsco, Admiral, and Edy Klein have intentionally retaliated against the Plaintiffs based upon their internal and external complaints of discrimination (and based on their support of the discrimination complaints of the other Plaintiffs), in the terms and conditions of their employment, in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines;  being subjected to repeated verbal hostilities, abuses, and threats;  being subjected to poorer, and changed, shift times, schedules and fill-in opportunities;  being subjected to restrictions on outside work opportunities;  having new requirements added to the Plaintiffs' continuing their employment;  having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday;  and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and with two of the Plaintiffs having thusfar also been terminated from Admiral);  and more, all in violation of 42 U.S.C. Section 1981.

45.  By reason of the Defendants' retaliation against the Plaintiffs, the Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

46.  Further, said actions on the part of the Defendants were intentional, willful, and malicious conduct and/or in reckless disregard for the Plaintiffs' rights as secured by 42

U.S.C. Section 1981, as amended by the Civil Rights Act of 1991, giving rise to punitive damages.


### AS AND FOR A FOURTH CAUSE OF ACTION

(Title VII     -     race discrimination)
(brought by Plaintiffs Smith and Brown against Defendant Invsco)

47.  Plaintiffs Smith and Brown repeat and reallege each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

48.  Defendant Invsco has intentionally discriminated against Plaintiffs Smith and Brown based upon their race, in the terms and conditions of their employment, in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines;  being subjected to repeated verbal hostilities, abuses, and threats;  being subjected to poorer, and changed, shift times, schedules and fill-in opportunities;  being subjected to restrictions on outside work opportunities;  having new requirements added to the Plaintiffs' continuing their employment;  having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday;  and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and with two of the Plaintiffs having thusfar also been terminated from Admiral);  and more, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

18

49.  By reason of Defendant Invsco's discrimination against Plaintiffs Smith and Brown, said Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

50.  Further, said actions on the part of Defendant Invsco were intentional and willful conduct, giving rise to punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

(Title VII   -   racial harassment and hostile work environment)
(brought by Plaintiffs Smith and Brown against Defendant Invsco)

51.  Plaintiffs Smith and Brown repeat and reallege each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

52.  Defendant Invsco has intentionally harassed Plaintiffs Smith and Brown based upon their race, and created a racially hostile work environment, in the terms and conditions of their employment, in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines;  being subjected to repeated verbal hostilities, abuses, and threats;  being subjected to poorer, and changed, shift times, schedules and fill-in opportunities;  being subjected to restrictions on outside work opportunities;  having new requirements added to the Plaintiffs' continuing their employment;  having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday;  and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and with two of

the Plaintiffs having thusfar also been terminated from Admiral);  and more,  all in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended

by, inter alia, the Civil Rights Act of 1991.

53.  By reason of Defendant Invsco's discrimination against Plaintiffs Smith and

Brown, said Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering

great pain, humiliation and mental anguish, all to their damage.

54.  Further, said actions on the part of Defendant Invsco were intentional and willful

conduct, giving rise to punitive damages.


## AS AND FOR A SIXTH CAUSE OF ACTION

(Title VII  -  retaliation)
(brought by Plaintiffs Smith and Brown against Defendant Invsco)

55.  Plaintiffs Smith and Brown repeat and reallege each and every allegation set

forth above with the same force and effect as if more fully set forth hereat.

56.  Defendant Invsco has intentionally retaliated against Plaintiffs Smith and Brown

based upon their internal and external complaints of racial discrimination (and based on their

support of the discrimination complaints of the other black Doormen), in the terms and

conditions of their employment, in connection with, inter alia: being repeatedly issued

unwarranted, outrageous, and overly harsh disciplines;  being subjected to repeated verbal

hostilities, abuses, and threats;  being subjected to poorer, and changed, shift times, schedules

and fill-in opportunities;  being subjected to restrictions on outside work opportunities;

having new requirements added to the Plaintiffs' continuing their employment;  having

additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday;  and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and with two of the Plaintiffs having thusfar also been terminated from Admiral);  and more, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

57.  By reason of Defendant Invsco's retaliation against Plaintiffs Smith and Brown, said Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

58.  Further, said actions on the part of Defendant Invsco were intentional and willful conduct, giving rise to punitive damages.

WHEREFORE, the Plaintiffs demand that:

a.  The Plaintiffs' employment with the Defendants be reinstated;

b.  The Plaintiffs' employment record with the Defendants be purged of all adverse documents which were placed in their file due to race discrimination or retaliation;

c.  The Defendants be permanently enjoined from discriminating against the Plaintiffs on any basis forbidden by 42 U.S.C. Section 1981 and Title VII;

d.  The Defendants be Ordered to compensate, reimburse and make whole the Plaintiff for all the income and benefits Plaintiff would have received had it not been for the Defendant's illegal actions, including, but not limited to backpay and benefits;

e.  Pursuant to the Plaintiffs' First, Second, and Third causes of action, that the Defendants be Ordered to compensate, reimburse and make whole the Plaintiffs for the Plaintiffs' compensatory damages in an amount to be determined at trial, but in no event less than TWO MILLION ($2,000,000.00) DOLLARS;

f.   Pursuant to Plaintiffs Smith's and Brown's Fourth, Fifth and Sixth causes of action, that Defendant Invsco be Ordered to compensate, reimburse and make whole Plaintiffs Smith and Brown for their compensatory damages in the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS each;

g.   Pursuant to the Plaintiffs' First, Second, and Third causes of action, that the Defendants be Ordered to pay the Plaintiffs punitive damages in an amount sufficient to deter the Defendants from a repetition of such conduct, but in no event less than FIVE MILLION ($5,000,000.00) DOLLARS;

h.   Pursuant to Plaintiffs Smith's and Brown's Fourth, Fifth and Sixth causes of action, that Defendant Invsco be Ordered to pay Plaintiffs Smith and Brown punitive damages in the sum of THREE HUNDRED THOUSAND ($300,000.00) DOLLARS each;

i.   The Defendants be Ordered to pay Plaintiffs prejudgment interest;

j.   The Defendants be Ordered to pay the costs and disbursements of this action, including reasonable attorney fees;  and

k.   for such other and further relief as may be just and proper.


Plaintiff demands a jury trial on the matters complained of herein.


Respectfully submitted,


By: /s/ David Porter_____
    David Porter

DAVID PORTER, ESQ.
Attorney for the Plaintiffs
11 S. LaSalle Street   -   Suite 1000
Chicago, Illinois 60603
(312) 236-1207