UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTER DIVISION

| | |
|---|---|
| JAMES T. SMITH, ROBERT TERRY, PAUL BROWN and HARVEY EVERETT,<br><br>Plaintiffs,<br><br>v.<br><br>INVSCO GROUP, LTD., PLAZA 440 PRIVATE RESIDENCES CONDOMINIUM ASSOCIATION, ADMIRAL SECURITY SERVICES, INC. and EDY KLEIN,<br><br>Defendants. | 08-C-0579<br><br>Judge Joan H. Lefkow<br><br>Magistrate Judge Nolan |

## DEFENDANT INVSCO GROUP, LTD.'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

Defendant **INVSCO GROUP, LTD**, by and through its attorneys, The Patterson Law Firm, PC, and for its Answer to Plaintiffs' **JAMES T. SMITH, ROBERT TERRY, PAUL BROWN, and HARVEY EVERETT** Second Amended Complaint, state as follows:

### JURISDICTION AND VENUE

1. This is a civil action seeking monetary damages and affirmative relief based upon the Defendants' violation of 42 U.S.C. Section 1981 and Title VII of the Civil Rights Act of 1964, as amended by, inter alia, the Civil Rights Act of 1991, for the Defendants' discrimination against, and of, the Plaintiffs due to their race (black), and for the Defendants' retaliation against the Plaintiffs due to their internal and external complaints of discrimination (and based on their support of the discrimination complaints of their fellow black Doormen) in connection with:

   a. the Defendants' having subjected the Plaintiffs to disparate and adverse terms and conditions of employment (including but not limited to such issues as the Plaintiffs: being

1

repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses, and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and more); and

b. the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and the Condo Assoc., and with two of the Plaintiffs having thusfar also been terminated from Admiral).

**ANSWER:**    Defendant Invsco Group, Ltd. ("Invsco") admits that Plaintiffs seek monetary damages and affirmative relief under 42 U.S.C. Section 1981 and Title VII of the Civil Rights Act of 1964, as amended by, <u>inter alia</u>, the Civil Rights Act of 1991. Invsco admits that Plaintiffs' race is black.  Invsco admits that it issued written notices of Plaintiffs' noncompliance with Plaza 440's rules regarding doormen, but denies that such notices were unwarranted, outrageous, or overly harsh. On information and belief, Invsco admits that two of the Plaintiffs were terminated by Admiral.  Invsco denies each and every remaining allegation and legal conclusion in Paragraph 1.

2. Jurisdiction of this Court over this controversy is invoked under 28 U.S.C Section and 28 U.S.C. Sections 1343 (3) and (4).

**ANSWER:**    Invsco admits that this court has jurisdiction pursuant to 28 U.S.C. Sections 1343 (3) and (4) as to all Plaintiffs except Robert Terry. Terry signed a settlement agreement divesting this court of jurisdiction. Terry's EEOC claims as to Invsco are precluded by his failure to name

2

Invsco in his complaint to the EEOC and his failure to give Invsco notice of his claims.

    3.  Venue is proper pursuant to 28 Section 1391.

**ANSWER:**  Admitted, except as to Terry (see Answer to Paragraph 2 above).

    4.  All conditions precedent to commencing the Title VII claims herein have been satisfied in that: a. Plaintiffs Smith, Terry, and Brown have filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"); b. the EEOC has issued Right-to-Sue Letters (dated October 26, 2007 and December 10, 2007 to Paul Brown, dated October 29, 2007 and November 20, 2007 to Robert T. Smith, and February 21, 2008 to Terry): and c. Plaintiffs Smith, Terry, and Brown have brought this action within ninety days of their respective receipt of the aforesaid Right-to-Sue Letters.

**ANSWER:**  Invsco admits that Smith, Terry and Brown filed charges against it with the EEOC; Invsco admits that the EEOC issued letters giving Smith and Brown the right to sue Invsco, but denies that Invsco received notice of any complaint filed with the EEOC or IDHR by Terry after June 6, 2007, nor any letter giving Terry the right to sue prior to this lawsuit.  Invsco admits that Smith and Brown brought this action within ninety days of their respective receipt of the Right-to-Sue letters. Invsco denies each and every remaining allegation in Paragraph 4.

**THE PARTIES**

    5.  The Plaintiffs, at all times hereinafter mentioned, were and still are residents and domiciliary of the County of Cook, State of Illinois, specifically residing at the following addresses:

        James Smith    -    16341 Cottage Grove, South Holland,

|                |     | Illinois 60473                                    |
|----------------|-----|---------------------------------------------------|
| Robert Terry   | -   | 4448 W. Thomas, Chicago. Illinois 60651           |
| Paul Brown     | -   | 2404 E. Street, Chicago, Illinois 60649           |
| Harvey Everett | -   | 7130 Ingleside, Chicago, Illinois 60619           |

**ANSWER:**   On information and belief, Invsco admits the allegations in

Paragraph 5.

6. Upon information and belief, Defendant Invsco Group, Ltd.
(hereinafter "Invsco") is a domestic corporation authorized to do business
in the state of Illinois, and is engaged in an industry affecting commerce.
Defendant Invsco has employed twenty or more employees for each
working day in each of twenty or more calendar weeks in the current or
proceeding year. Defendant Invsco is an "employer" as required by Title
VII. Defendant Invsco's principle place of business is located in the
County of Cook at 1212 North Street, Chicago, Illinois 60610.

**ANSWER:**   Admitted.

6b.        Upon and belief, Defendant Plaza 440 Private Residences
Condominium Association (hereinafter the "Condo Assoc.") is a domestic
not-for-profit corporation authorized to do business in the state of
Illinois, and is engaged in an industry affecting commerce. Defendant
Condo Assoc. has employed twenty or more employees for each working
day in each of twenty or more calendar weeks in the current or
proceeding year. Defendant Condo Assoc. is an "employer" as required
Title VII. Defendant Condo Assoc.'s principle place of business is located
in the County of Cook at 440 Wabash, Chicago, Illinois 60611.

**ANSWER:**   On information and belief, Invsco denies that Plaza 440 has

employed twenty or more employees for each working day in each of

twenty or more calendar weeks in the current or preceeding year.  Invsco

denies the legal conclusions in Paragraph 6b.  On information and belief,

Invsco admits the remaining factual allegations in Paragraph 6b.

6c. The Condo Assoc. has been named as a Defendant in this lawsuit
due to the Plaintiffs having been advised that the Condo Assoc. was an
employer of the Plaintiffs as well as of Defendant Edy Klein (and perhaps

4

of other relevant wrongdoing individuals), and also as a result of the actions, and also failure to act, of the Condo Assoc.'s Board of Directors and the members of its Board of Directors in power during the relevant time period.

**ANSWER:**   Invsco lacks knowledge as to why the Condo Assoc. has been

named as a Defendant.  Invsco admits that the Condo Assoc. was an

employer of Plaintiffs at times and was the employer of Defendant Edy

Klein.  Invsco denies the remaining allegations in Paragraph 6c.

7. Upon information and belief, Defendant Admiral Security Services, Inc. (hereinafter "Admiral") is a domestic corporation authorized to do business in the state of Illinois, and is engaged in an industry affecting commerce. Defendant Admiral has employed twenty or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding year. Defendant Admiral is an "employer" as required by Title VII. Defendant Admiral's principle place of business is located in the County of Cook at 5940 West Touhy Avenue, Suite 130, Niles, Illinois 60714.

**ANSWER:**   On information and belief, Invsco admits that Admiral is a

domestic corporation authorized to do business in the state of Illinois

and that its principal place of business is located in the County of Cook

at 5940 West Touhy Avenue, Suite 130, Niles, Illinois 60714.  Invsco

lacks sufficient knowledge to form a belief as to the truth of the

remaining allegations of Paragraph 7 and therefore demands strict proof

thereof.

8. Defendant Edy Klein is, and was at all material times, the Property Manager for Defendants Invsco and the Condo Assoc. at 440 N. Wabash, Chicago, Illinois 60611. She is sued in her individual capacity.

**ANSWER:**   Invsco denies that Klein is sued in any capacity other than

as Property Manager of Plaza 440.  Invsco admits the remaining

allegations of Paragraph 8.

9. Defendants Invsco and the Condo Assoc. have employed (and also jointly employed) Edy Klein at all times material hereto. Defendants Invsco and the Condo Assoc. are responsible for the acts of Edy Klein while she was acting within the scope of her employment.

**ANSWER:** Invsco admits that Plaza 440 and Invsco are responsible for

the foreseeable acts of Klein when she is acting within the scope of her

employment in furtherance of Plaza 440's and Invsco's business. Invsco

admits that Klein is a joint employee of Plaza 440 and Invsco. Invsco

denies each and every remaining allegation and legal conclusion in

Paragraph 9.

10. During all relevant times, Defendants Invsco, the Condo Assoc., Admiral, and Edy Klein were acting directly or indirectly in the interest of the employer in relation to the employee Plaintiffs and, therefore, were and are "employers" as defined under the federal statutes relied upon herein.

**ANSWER:** Invsco denies any allegation that it is responsible for the

independent acts of Admiral during Plaintiffs' employment by Admiral.

Invsco denies that after June 1, 2007, it was Plaintiffs' employer. Invsco

admits the remaining allegations in Paragraph 10.

## BACKGROUND

11. All of the Plaintiffs are black individuals and have worked, or are still working, as Doormen at the building located at 440 N. Wabash Chicago, Illinois 60601 (hereinafter "Plaza 440").

**ANSWER:** Admitted.

12. The Plaintiffs commenced their employment as Doormen at Plaza 440 in or about the following dates: James T. Smith - March 8, 1996; Robert Terry - October 9, 1997; Paul Brown - November, 1991; and Harvey Everett - November, 2002.

6

**ANSWER:**   On information and belief, Invsco admits the dates on which

Smith, Terry, Brown and Everett began their employment at Plaza 440;

however, the building was owned by an unrelated entity at the time, and

Invsco had no control over any decision to hire Plaintiffs.

13.      Defendant Invsco took over ownership and management of
Plaza 440 in or about January, 2005, with Defendant Condo Assoc. being
formed and incorporated shortly thereafter, at or about which time
Defendants Invsco and the Condo Assoc. became the employer(s), and
joint employers, respectively, of all of the Plaintiffs.

**ANSWER:**   Admitted.

14.      The Plaintiffs, at all times relevant hereto are, or have been,
members of the AFL-CIO, Service Employees Local No. I.

**ANSWER:**   Invsco notes that Service Employees International Union is

no longer affiliated with the AFL-CIO.  Invsco admits each and every

remaining allegation in Paragraph 14.

15.      The maintenance staff at Plaza 440 are also union employees
employed by Invsco and the Condo Assoc., and such maintenance staff
temporarily perform Doormen duties primarily in connection with
relieving the Doormen for breaks or, if there is a Doorman shortage, for a
particular shift.

**ANSWER:**   Invsco admits that members of the maintenance staff are

union employees who, on occasion, relieve the Doormen for regularly

scheduled breaks.  Invsco admits that these members of the

maintenance staff are jointly employed by Invsco and the Condo Assoc.

Invsco lacks sufficient knowledge to form a belief as to the truth of the

remaining allegations of Paragraph 15 and therefore demands strict proof

thereof.

16.     While the Doorman positions at Plaza 440 have been filled overwhelmingly with black individuals (except for an occasional white employee, who is treated better than the Plaintiffs). The maintenance staff at Plaza 440 have been comprised overwhelmingly with white and non-black employees.

**ANSWER:**   Invsco admits that at all times relevant to this complaint,

many of the doorman positions have been filled with black men.  Invsco

admits that the current maintenance staff is made up of white, non-

black and black employees and that the majority of the maintenance

staff is non-black.  Invsco denies each and every remaining allegation in

Paragraph 16.

17.     During the Plaintiffs' employment at Plaza 440 and with the Defendants, the Plaintiffs have had good to excellent work performance, with the Plaintiffs having been good, hard-working, and productive employees. The Plaintiffs also had good to excellent work records prior to Defendants Invsco and Edy Klein coming to be in charge of Plaza 440.

**ANSWER:**   Invsco lacks sufficient knowledge to form a belief as to the

truth of the allegations concerning Plaintiffs' employment prior to

January 2005 and after June 1, 2007, and therefore demands strict

proof thereof.  Invsco denies each and every remaining allegation in

Paragraph 17.

18.     On an ongoing and repeated basis commencing in or about 2006 and continuing to the present time, Defendants Invsco, the Condo Assoc., and Edy Klein have subjected the Plaintiffs to extremely disparate, adverse, and hostile treatment, and a hostile work environment, as compared to how similarly situated white and non-black employees (primarily, but not limited to, the white and non-black maintenance employees and a white Doorman) were treated by such Defendants, with regards to -amongst other things -the following:

**ANSWER:**   Denied. Specifically, Invsco denies that it subjected Plaintiffs

to disparate, adverse, nor hostile treatment. Invsco denies that it subjected Plaintiffs to a hostile work environment. Invsco denies that any disparity in its treatment of the maintenance staff was based on race.

    a. issuing the Plaintiffs repeated unwarranted and outrageous written warnings and suspensions, and with such disciplines based on deliberately misleading and falsified claimed facts;

**ANSWER:** Invsco admits that Klein issued written notices regarding Plaintiffs' failure to adhere to the written guidelines governing the performance of doormen at Plaza 440, but denies that those notices were unwarranted or outrageous. Invsco denies each and every remaining allegation in Paragraph 18a.

    b. issuing the Plaintiffs overly harsh disciplines;

**ANSWER:** Denied.

    c. subjecting the Plaintiffs to repeated verbal hostility, abuse and threats (which among other things have placed the Plaintiffs in fear of their persons as well as in fear of losing their employment)

**ANSWER:** Denied.

    d. passing over a more senior part-time/ fill-in black doorman (Perry Moon) for an available full-time position, as well as irregularly passing him over for fill-in opportunities, in favor of a white individual (Joe Colletti);

**ANSWER:** Denied.

    e. repeatedly allowing a white Doorman (Joe Colletti) preferential treatment as compared to the Plaintiffs with regards to, amongst other things, permitting him to leave early from his shift (and have him be relieved by maintenance rather than by a Plaintiff Doorman) so that he could get to his other job on time; granting him fill-in time; changing his schedule to his advantage;

9

**ANSWER:**    Denied.

       f.  criticizing and accusing the Plaintiffs of using their sick time and vacation time strategically to enable other Doormen to receive overtime (which was not the case), but with the maintenance staff having had the same usage practices of their sick time and vacation time yet the Defendants not having similarly criticized or accused the maintenance staff of abusing such time; and

**ANSWER:**    Denied.

       g.  no longer permitting the Plaintiffs to perform side-jobs for the Plaza 440 tenants on the Plaza 440 property (yet permitting white and non-black employees to do so).

**ANSWER:**    Invsco lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 18g, and therefore demands strict proof thereof.

 This is, in part, discussed in greater detail within a group written internal discrimination complaint dated March 22, 2007, annexed hereto at Exhibit "A".

**ANSWER:**    Invsco states that Exhibit A speaks for itself.  Invsco lacks sufficient knowledge to form a belief as to the truth of the remaining allegations of Paragraph 18 and its subparts and therefore demands strict proof thereof.

    19.       As a result of such aforesaid repeated and ongoing discriminatory abuses as have been listed above, commencing in or about March 2007, the Plaintiffs began making internal and external discrimination complaints (and commenced supporting the discrimination complaints of their fellow black Doormen).

**ANSWER:**    On information and belief, Invsco never received a copy of Plaintiffs' alleged internal complaint and therefore requires strict proof thereof.  Invsco denies that there is any complaint of racial

10

discrimination in Exhibit A.  Invsco admits that Brown, Terry and Smith

filed external complaints with state and federal agencies.  Invsco admits

that Plaintiffs filed grievances with their union representatives, which the

parties have settled.  Invsco denies each and every remaining allegation

of paragraph 19.

20.     In late March, 2007, and as a result of being subjected to repeated racial discrimination, racial harassment, and a racially hostile work environment, in part described above, the Plaintiffs as a group made and delivered a 2-page written internal discrimination complaint against Defendants Invsco, the Condo Assoc., and Edy Klein, dated March 22, 2007(which was signed by all of the Plaintiffs, with a copy being annexed hereto at Exhibit "A").

**ANSWER:**  Invsco states that Exhibit A speaks for itself.  On information

and belief, Invsco never received a copy of Plaintiffs' alleged internal

complaint and therefore requires strict proof thereof.  Further answering,

Invsco notes that nowhere in the letter do Plaintiffs claim that any of the

alleged discriminatory practices were based on race.  Moreover, at the

time the complaint was allegedly written, none of the Plaintiffs had filed

any complaint with the IDHR nor EEOC.  Moon, a signor to the letter but

not a Plaintiff, had filed a complaint with the IDHR, but he complained of

age-based rather than race-based discrimination. Moon voluntarily

dismissed his complaint and is not a Plaintiff in this law suit. Invsco

denies each and every remaining allegation in Paragraph 20.

21.     Defendants Invsco, the Condo Assoc., and Edy Klein became aware, and were enraged, by the Plaintiffs' complaints of discrimination, and they endeavored to retaliate against the Plaintiffs for same, and thereafter they then escalated their abusive treatment of the Plaintiffs.

**ANSWER:**   Denied.

22.     In or about May 2007, and shortly following the Plaintiffs having made (and expressed support for) their internal complaints of discrimination against Defendants Invsco, the Condo Assoc., and Edy Klein, said Defendants in retaliation for same took steps towards, and then acted, to terminate each of the Plaintiffs from their employment with Invsco and the Condo Assoc., and transferred the Plaintiffs' employment over to Defendant Admiral (but with Defendants Invsco, the Condo Assoc., and Edy Klein continuing to have significant input in, and continuing to manipulate and control, the Plaintiffs' employment conditions, disciplines, and terminations). This was done with a clear goal by Defendants Invsco, the Condo Assoc., and Edy Klein, along with the complicity and active participation of Defendant Admiral, of harassing the Plaintiffs and ultimately attempting to terminate all or most of the Plaintiffs from their employment at the Plaza 440 location - which retaliatory goal has largely succeeded. This is discussed in greater detail below.

**ANSWER:**   Invsco admits that, as permitted by the Plaintiffs' collective

bargaining agreement, the doormen positions were outsourced to

Admiral on June 1, 2007. Invsco denies each and every remaining

allegation in Paragraph 22.

23.     The Defendants' claimed reasons for terminating the Plaintiffs' employment with Invsco and the Condo Assoc. and having their employment transferred to Admiral, was that the Plaintiffs would be given more and better training, and that the Plaintiffs allegedly would receive new uniforms - but none of that has occurred (with this further showing that the Defendants' claimed reasons for such terminations and transfer to Admiral were false and pretextual, with their instead doing this for discriminatory and retaliatory reasons).

**ANSWER:**   Denied.

24.     The Defendants, by, through, and in connection with their termination of the Plaintiffs' employment and their transferring the Plaintiffs' employment from Defendants Invsco and the Condo Assoc. to Defendant Admiral, caused the Plaintiffs to suffer material adverse actions in part as follows:

a.  the Defendants required the Plaintiffs to apply, and get

approved, for PERC (Permanent Employee Registration Card) cards, which was an additional condition of employment. The Plaintiffs had not previously been required to have PERC cards in their employment as Doormen for Defendants Invsco and the Condo Assoc.;

b. the Defendants unnecessarily required the Plaintiffs to get approved for PERC cards before allowing the individual Plaintiffs to work for Defendant Admiral, thereby resulting in Plaintiffs James Smith and Paul Brown being held out of work, and missing approximately 2-4 weeks of pay while waiting for approval for their PERC cards. In this regards it should also be noted that:

- Under Section 1240.520 of the Illinois Administrative Code the Plaintiffs under Section e(3) were exempt from the requirement of obtaining a PERC card, and further under Section b even had they not been exempt (which they were) the Defendants at a minimum could have also employed them in a temporary capacity;

c. the Defendants made Plaintiffs' employment much more difficult, and contributed to the Plaintiffs being subjected to a more racially and retaliatorily hostile work environment (to which white and non-black employees, and employees who had not complained of discrimination were not subjected) by, amongst other things:

i. deactivating their key cards, which resulted in the Plaintiffs being prevented access to the card reader doors to the alley and rear lobby of the building and to the elevators;

ii. taking away their key cards (different from the above) that had been used to access and leave the attached garage, as a result of which whenever the Plaintiffs would want to drive into the garage or drive out of the garage (for example at the beginning or end of their shifts) the Plaintiffs would need to call the maintenance staff and wait for the maintenance staff to come and let them into/out of the garage;

iii. the Plaintiffs were required to sign a document that they would not use the bathrooms on the 8th floor, and the Plaintiffs were not permitted to use the bathrooms on the 8th floor (notably, maintenance staff and other Doormen/ Security Guards from

13

Admiral routinely used, and were permitted to use, those bathrooms)

iv. the Plaintiffs were subjected to, and required to sign, an employee manual/handbook, and another document, that imposed new and additional conditions and requirements to the Plaintiffs' employment; and

v. the Defendants changed the Plaintiffs' work schedules (without any stated reason), and when Plaintiffs complained the Defendants falsely claimed that the Plaintiffs had agreed to such changes and not opposed the shift change (which was not the case) and the Defendants also advised in a harsh manner that the Plaintiffs were required to accept the new schedule or they would be out of a job;

vi. the Defendants required the Plaintiffs to do the security rounds of walking and inspecting the garage looking for dangerous situations (which is what the Plaintiffs did not need to do prior to Admiral coming in, and which were duties that the Defendants did not require to be performed of the other employees of Admiral, who worked at Plaza 440 but not complained of discrimination); and

d. although the Plaintiffs' job titles remained as Doormen (that they had held for many years) there was ambiguity by the tenants and public as to whether the Plaintiffs were Doormen or Security Guards, and there was less prestige for the Plaintiffs, as a result the Plaintiffs now instead working for a security guard company (Admiral Security Services), the Plaintiffs being required to obtain PERC cards and perform security rounds in the garage, by the above-listed restrictions on their movement, and by Admiral using security guards to fill in for open Doormen shifts.

**ANSWER:**   Invsco objects to paragraph 24 as failing to conform to Fed.

R. Civ. P. 8(e), which requires pleadings to be concise and direct and

therefore moves to strike the same from the Second Amended Complaint.

Notwithstanding and without waiver of this objection, Invsco admits that

Admiral required its employees to obtain PERC cards.  Invsco admits

that Smith and Brown's delay in getting these cards led to their missing

work, but denies that they were damaged because Smith and Brown

were given back pay for the missed work.  Invsco lacks sufficient

knowledge as to the allegations concerning Admiral, and therefore

demands strict proof of the same. Invsco denies that anything in this

Paragraph qualifies as a materially adverse employment action.  Invsco

denies each and every remaining allegation in Paragraph 24.

25.     Although Defendants Invsco, the Condo Assoc., and Edy
Klein caused the Plaintiffs' employment, as provided above, to be
terminated from Invsco and the Condo Assoc., and then transferred to
Admiral, Defendant Admiral verbally and in a writing dated June 1, 2007
(entitled "General Instructions") directed that the Plaintiffs still work for
Invsco and the Condo Assoc., and were to always follow the direct
instructions of the Building Manager, Defendant Edy Klein. In this
regards see Exhibit "B."

**ANSWER:**   Invsco states that Exhibit B speaks for itself.  Further

answering, Invsco admits that it gave general guidelines to Admiral as to

the standards to which the doormen should be held.  Admiral is a vendor

of Invsco and Plaza 440, and on information and belief has adopted

procedures to meet those standards.  Invsco denies each and every

remaining allegation in Paragraph 25.

26.     Defendants Invsco, the Condo Assoc., and Edy Klein acted
covertly to hide their continued, and escalated, discrimination and
retaliation against the Plaintiffs behind, and through, having Admiral be
the Plaintiffs' direct employer.

**ANSWER:**   Denied.

27.     From the time Admiral became the Plaintiffs' employer in or
about June, 2007 the racial discrimination, racial harassment, racially
hostile work environment, and retaliation being committed against the

Plaintiffs by Defendants Invsco, the Condo Assoc., Admiral, and Edy greatly escalated, with the Defendants making it clear that the Plaintiffs were not wanted at Plaza 440 and that the Defendants were going to take steps to cause the Plaintiffs' employment to be terminated. In this regards see, in part, the following:

     a. much of the disparate, hostile, and adverse conduct that the Plaintiffs were being subjected to referenced above in paragraph 18 continued, and even increased in severity and (particularly with regards to disciplines and harsh and hostile language);

     b. the Plaintiffs began being subjected to the conduct referenced in paragraph 24;

     c. the Defendants actively engaged in surveillance of the Plaintiffs, looking for grounds to discipline and terminate the Plaintiffs' employment, but with the Defendants largely, and repeatedly, ignoring and disregarding the repeated abuses of similarly situated white and non-black employees as well as the repeated abuses of black employees who had not complained of discrimination;

     d. the Defendants actively attempted to disparately and negatively paper, and distort, the Plaintiffs' personnel files with unwarranted and excessive disciplines towards attempting to provide a pretextual justification for their termination of the individual Plaintiffs' employment; and

     e. within a few months of Defendant Admiral being brought in to Plaza 440 the Defendants terminated, and caused to be terminated, the longterm employment of two of the four Plaintiffs (Robert Terry and Paul Brown) from their employment at Plaza 440, with this occurring for clearly pretextual, racially discriminatory, and retaliatory reasons.

**ANSWER:** Invsco does not control the manner in which Admiral directs its employees, and thus, it lacks sufficient knowledge to form a belief as to the allegations that directly reference Plaintiffs' employment with Admiral, and therefore, demands strict proof of the same. Invsco denies each and every remaining allegation in Paragraph 27.

    28.     On or about June 5, 2007 Robert Terry filed an IDHR Charge of Discrimination against Defendant Invsco. On or about May 21, 2007

and June 6, 2007 Plaintiff James T. Smith filed IDHR Charges of Discrimination against Defendant Invsco. On or June 7, 2007 and August 2 and 8, 2007 Plaintiff Brown filed IDHR Charges of race discrimination and retaliation against the Defendants.

**ANSWER:**    On information and belief, Terry filed an IDHR Charge of Discrimination on or about June 6, 2007.  Invsco admits each and every remaining allegation in Paragraph 28.

29.    Beyond the above, some additional examples, but not all, of the Defendants' extremely disparate, adverse, and hostile treatment of the Plaintiffs, and the hostile work environment that the Plaintiffs have been subjected, as compared to how similarly situated white and non-black employees - as well as employees who did not complain of race discrimination - were treated, also include the following:

**James T. Smith**

      a. the Defendants actively engaged in issuing him repeated, unwarranted, and exaggerated, write-ups and a 3-day suspension;

      b. on or about March 20, 2007 the Defendants made a clearly unwarranted allegation against him that he had committed sexual harassment - which was clearly not the case - with the Defendants disciplining him for this. By contrast, when white and non-black employees, and employees who had not complained of discrimination made abusive, sexually harassing, or racially harassing statements to individuals at Plaza - which occurred repeatedly - the Defendants repeatedly turned a blind eye to this, and even when it was further brought to their attention they repeatedly did not issue disciplines and did not suspend such offending individuals;

      c. the Defendants verbally threatened him;

      d. the Defendants purposely disregarded his Lead Doormen position;

**ANSWER:**    Invsco objects to the allegations regarding James Smith in Paragraph 29 as they do not specify which Defendant performed the objectionable actions.  Invsco admits that it issued notices that Smith

violated the written guidelines established for Plaza 440, but denies that such notices were unwarranted nor exaggerated. Moreover, as a condition of outsourcing the doormen's employment to Admiral, each doorman's file was purged prior to the outsourcing. Finally, Invsco admits that while Smith was suspended for three days, the issue was settled through the union grievance process, and Smith was fully compensated for the suspension. Invsco is unaware of any incidents where it "turned a blind eye" to any sexually or racially harassing statements at Plaza 440 or anywhere else and demands strict proof of the same. Invsco denies each and every remaining allegation in Paragraph 29 referencing James T. Smith.

**Robert Terry**

    a.  the Defendants actively engaged in issuing him repeated, unwarranted, and exaggerated, write-ups and suspensions:

    b.  commencing in or about November, 2006 and continuing to in or about June, 2007 the Defendants changed his shift, repeatedly requiring to work back-to-back shifts, but refused to pay him swing shift money that was required to be paid and that was paid to other individuals;

    c.  on or about January 15, 2008 the Defendants suspended him pending termination, and then subsequently terminated his employment effective January 16, 2008, and caused him to be terminated, from his 10-year employment at Plaza 440 for a clearly false, pretextual reason, and based on false and claimed facts that the Defendants knew and/or reasonably should have known were false that did not warrant either discipline or termination;

    d.  the Defendants required him to travel to Admiral's Niles offices for his January 25, 2008 grievance meeting with regard to the issue of his termination (whereas in the past the grievance had been held at Plaza 440);

**ANSWER:**    Invsco objects to the allegations regarding Robert Terry in

Paragraph 29 as they do not specify which Defendant performed the objectionable actions. Invsco admits that it issued notices that Terry violated the written guidelines established for Plaza 440, but denies that such notices were unwarranted nor exaggerated. Invsco affirmatively states that it received two complaints from residents regarding Terry's failures to comply with the Plaza 440 guidelines. Invsco lacks sufficient knowledge to form a belief as to the truth of the allegations regarding Terry's termination and January 28, 2008, grievance meeting because it was no longer Terry's employer, and therefore, Invsco demands strict proof thereof. Invsco denies each and every remaining allegation in Paragraph 29 referencing Robert Terry.

**Paul Brown**

  a. on or about July 19, 2007 the Defendants looked at a week's worth of videotapes in an attempt to catch Plaintiff Brown sleeping, while for a long period of time Defendants purposely and knowingly ignored and disregarded that another Doorman (Lawrence Littlejohn), who had not complained of discrimination, was repeatedly sleeping on the job. The Defendants were not writing up Mr. Littlejohn for this, and only belatedly acted to terminate such individual's employment after several months of such repeated sleeping on the job by Mr. Littlejohn, and after the tenants were repeatedly complaining;

  b. on or about August 5, 2007, and despite his good work-record, the Defendants without valid justification quickly terminated him, and caused him to be terminated, from his almost 17-year employment for a false exaggerated, and pretextual reason and based on false claimed facts that the Defendants knew were false (with a non-black similarly situated employee who had not complained of discrimination, and who was directly involved in the matter, and had engaged in that same conduct and more that was used by the Defendants as a basis to terminate Plaintiff

Brown's employment, not having had his employment
terminated by the defendants);

**ANSWER:**   Invsco objects to the allegations regarding Paul Brown in

Paragraph 29 as they do not specify which Defendant performed the

objectionable actions.  Subject to and without waiver of this objection,

Invsco denies that it looked at any videotapes of Brown on or about July

19, 2007.  Further, Invsco denies that it terminated Brown or caused

Brown to be terminated.  Invsco lacks sufficient knowledge to form a

belief as to the truth of the remaining allegations in Paragraph 29

regarding Paul Brown, and therefore demands strict proof thereof.

**Harvey Everett**

    a. in or about July 2006 the Defendants, without valid
justification, issued him a written discipline in connection
with a lock-up form, in which the address was incorrect -
but where the apartment number had been rewritten and
such writing was clearly not his handwriting;

    b. when Defendant Admiral came in the Defendants changed
his from Saturdays 7am - 3 pm to instead be on Mondays 11
pm -7 am. This caused him a hardship because he had a
full-time job, and it was very difficult to get to such job with
this schedule. When he told this to the Defendants they
advised that he had to take this new schedule or he be out of
a job;

**ANSWER:**   Invsco objects to the allegations regarding Harvey Everett in

Paragraph 29 as they do not specify which Defendant performed the

objectionable actions.  Invsco denies the allegations of paragraph 29,

subparagraph a concerning Harvey Everett.  Invsco denies that it

changed Everett's schedule after June 1, 2007.  Invsco lacks sufficient

knowledge to form a belief as to the truth of the remaining allegations of

paragraph 29, subparagraph b, concerning Everett and therefore

demands strict proof thereof.

    30.    The Defendants' conduct toward the Plaintiffs was racially discriminatory, racially harassing, constituted a hostile work environment, and was retaliatory for the Plaintiffs' complaints of discrimination (as well as retaliatory for the Plaintiffs' support of the discrimination complaints of their fellow black Doormen). To have treated such hardworking and productive black employees in such an adverse and hostile manner sends a terrible message as to the type of companies that Defendants Invsco, the Condo Assoc., and Admiral are in the Chicago area and in Illinois.

**ANSWER:**  Denied.

    31.    Based on the foregoing, and more, the Plaintiffs charge Defendants Invsco, the Condo Assoc., Admiral, and Edy Klein with unlawful discriminatory practices, harassment, and retaliation, relating to the Plaintiffs' employment, the terms and conditions of their employment, and the terminations of their employment, because of their race (black) and because of their complaints of discrimination and their support of the discrimination complaints of their fellow black Doormen.

**ANSWER:**  Invsco admits that Plaintiffs base their Second Amended

Complaint on allegedly discriminatory practices, harassment and

retaliation. Invsco denies each and every remaining allegation in

Paragraph 31.

## AS AND FOR A FIRST CAUSE OF ACTION

(42 U.S.C. 1981 - race discrimination)
(brought by all 4 Plaintiffs against all 4 Defendants)

    32.    The Plaintiffs repeat and reallege each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

**ANSWER:**  Invsco repeats and realleges its responses to the paragraphs

above as if fully set forth herein.

33.    The Plaintiffs are/were union employees of Defendants Invsco, the Condo Assoc., and Admiral, with the Plaintiffs' employment relationship with the Defendants having been created/guided by a written contract of indefinite term, and with the contractual relationship having incorporated certain terms and conditions from Defendants' employment policies and employment manuals and the collective bargaining agreement (i.e. - non-discrimination, seniority, work-rules, etc.).

**ANSWER:**    Invsco admits that Plaintiffs were represented by a union representative from January 2005 until June 1, 2007.  Invsco admits that from January 2005 until June 1, 2007, it was either the sole employer or joint employer of Plaintiffs.  Invsco admits that the terms of Plaintiffs' employment from January 2005 until June 1, 2007, were pursuant to a collective bargaining agreement, employee handbook and other written contracts.  Invsco denies that it was Plaintiffs' employer after June 1, 2007, and further denies any contractual relationship with Plaintiffs after that date.  Invsco lacks sufficient knowledge as to whether Plaintiffs had a contractual relationship with the other Defendants and therefore requires strict proof thereof.  Invsco denies each and every remaining allegation in Paragraph 33.

34.    The Plaintiffs had and have a contractual relationship with Defendants Invsco, the Condo Assoc., and Admiral, in connection with their employment, within the meaning of 42 U.S.C. Section 1981.

**ANSWER:**    Invsco admits that from January 2005 until June 1, 2007, it was either the sole employer or joint employer of Plaintiffs.  Invsco admits that the terms of Plaintiffs' employment from January 2005 until June 1, 2007, were pursuant to a collective bargaining agreement,

employee handbook and other written contracts. Invsco denies that it was Plaintiffs' employer after June 1, 2007, and further denies any contractual relationship with Plaintiffs after that date. Invsco denies each and every remaining allegation in Paragraph 34.

35.     Defendants Invsco, the Condo Assoc., Admiral, and Edy Klein have intentionally subjected the Plaintiffs to unequal and discriminatory treatment, and discriminated against, and harassed, the Plaintiffs based upon their race (black), in the terms and conditions of their employment (including but not limited to being repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities. abuses, and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and more), and in connection with the termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from and with two of the Plaintiffs having also been terminated from Admiral), all in violation of 42 U.S.C. Section 1981.

**ANSWER:**   Invsco admits that it gave Plaintiffs notice of their violations of the Plaza 440 written guidelines, but denies that such notices were unwarranted, outrageous, or overly harsh. Invsco admits that it no longer employs any of the Plaintiffs but denies that they were terminated (within the meaning of 42 U.S.C. Section 1981 or any other reasonable interpretation) because each Plaintiff kept his job at the same rate of pay and Invsco no longer employed any doorman. Invsco lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 35 regarding Admiral's termination of two of the Plaintiffs, and therefore demands strict proof thereof. Invsco denies each and every remaining

allegation in Paragraph 35.

36.     By reason of the Defendants' discrimination against the Plaintiffs, the Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

**ANSWER:**  Denied.

37.     Further, said actions on the part of the Defendants were intentional, willful, and malicious conduct and/or in reckless disregard for the Plaintiffs' rights as secured by 42 U.S.C. Section 1981, as amended by the Civil Rights Act of 1991, giving rise to punitive damages.

**ANSWER:**  Denied.

### AS AND FOR A SECOND CAUSE OF ACTION

(42 U.S.C. 1981 - racial harassment and
racially hostile work environment)
(brought by all 4 Plaintiffs against all 4 Defendants)

38.     The Plaintiffs repeat and each and every allegation set forth above with the same force and effect as if fully set forth hereat.

**ANSWER:**  Invsco repeats and realleges its responses to the paragraphs

above as if fully set forth herein.

39.     Defendants Invsco, the Condo Assoc., Admiral, and Edy Klein by their actions and inactions have caused and created a longterm racially hostile work environment that unreasonably interfered with the terms and conditions of the Plaintiffs' employment and the Plaintiffs' performance of their job, and that created an unreasonably racially hostile and coercive working environment, in connection with, inter alia, being repeatedly issued outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses, and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having thus far been terminated from Invsco and with two of the Plaintiffs having also been terminated from Admiral); and more; all in

violation of 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991.

**ANSWER:**    Invsco admits that it gave Plaintiffs notice of their violations of the Plaza 440 written guidelines, but denies that such notices were unwarranted, outrageous, or overly harsh. Invsco lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 39 regarding Admiral's termination of two of the Plaintiffs, and therefore demands strict proof thereof.  Invsco denies each and every remaining allegation in Paragraph 39.

40.      The Defendants' actions subjected the Plaintiffs to a repeated and racially hostile work environment in violation of 42 U.S.C. section 1981, as amended by the Civil Rights Act of 1991.

**ANSWER:**    Denied.

41.      By reason of the Defendants' actions in intentionally subjecting the Plaintiffs to racial harassment, and a racially hostile work environment, the Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

**ANSWER:**    Denied.

42.      Further, said actions on the part of the Defendants were intentional, willful, and malicious conduct and/or in reckless disregard for the Plaintiffs' rights as secured by 42 U.S.C. Section 1981, as amended by the Civil Rights Act of 1991, giving rise to punitive damages.

**ANSWER:**    Denied.

WHEREFORE, Defendant Invsco Group, Ltd. respectfully requests that this Court dismiss the Second Amended Complaint with prejudice in its entirety and for such other relief as this Court deems necessary and just.

## AS AND FOR A THIRD CAUSE OF ACTION

(32 U.S.C. 1981 -retaliation)
(brought by all 4 Plaintiffs against all 4 Defendants)

43.    The Plaintiffs repeat and each and every allegation set forth above with the same force and effect as if more fully set forth

**ANSWER:**   Invsco repeats and realleges its responses to the paragraphs above as if fully set forth herein.

44.    Defendants Invsco, the Condo Assoc., Admiral, and Edy Klein have intentionally retaliated against the Plaintiffs based upon their internal and external complaints of discrimination (and based on their support of the discrimination complaints of the other Plaintiffs), in the terms and conditions of their employment, in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses, and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and the Condo Assoc., and with two of the Plaintiffs having thus far also been terminated from Admiral); and more, all in violation of 42 U.S.C. Section 1981.

**ANSWER:**   Invsco admits that it gave Plaintiffs notice of their violations

of the Plaza 440 written guidelines, but denies that such notices were

unwarranted, outrageous, or overly harsh. Invsco denies that it issued

such notices in retaliation of any external or internal complaint as the

majority of the notices were issued prior to any complaints.  Invsco

affirmatively states that Plaintiffs' internal complaint does not mention or

give Invsco any reason to believe that Plaintiffs suffered from any race-

based discrimination—indeed, the only complaint filed at the time of

Plaintiffs' alleged internal complaint was that of Perry Moon, which

complained of age discrimination and did not allege any discrimination based on race.[1] Invsco specifically denies that it terminated its employment of Plaintiffs in retaliation of any internal or external complaint. Indeed, all but one external complaint was filed after Plaintiffs were given notice of the change in employers. Invsco lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 44 regarding Admiral's termination of two of the Plaintiffs, and therefore demands strict proof thereof. Invsco denies each and every remaining allegation in Paragraph 44.

45.    By reason of the Defendants' retaliation against the Plaintiffs, the Plaintiffs have a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

**ANSWER:**    Denied.

46.    Further, said actions on the part of the Defendants were intentional, willful, and malicious conduct and/or in reckless disregard for the Plaintiffs' rights as secured by 42 U.S.C. Section 1981, as amended by the Civil Rights Act of 1991, giving rise to punitive damages.

**ANSWER:**    Denied.

WHEREFORE, Defendant Invsco Group, Ltd. respectfully requests that this Court dismiss the Second Amended Complaint with prejudice in its entirety and for such other relief as this Court deems necessary and just.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Title VII race discrimination)
(brought by Plaintiffs Smith, Terry, and Brown against Defendant Invsco)

47.    Plaintiffs Smith, Terry and Brown repeat and reallege each

---

[1] Moon's complaint was dismissed on or about June 15, 2007, when Moon submitted a written request to withdraw the charge.

and every allegation set forth above with the same force and effect as if more fully set forth hereat.

**ANSWER:**  Invsco repeats and realleges its responses to the paragraphs above as if fully set forth herein.

48.     Defendant Invsco has intentionally discriminated against Plaintiffs Smith, Terry and Brown based upon their race, in the terms and conditions of their employment, in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses, and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and in the Defendants' termination of the Plaintiffs' employment (with all the Plaintiffs having been terminated from Invsco and the Condo Assoc. and with two of the Plaintiffs having also been terminated from Admiral); and more, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

**ANSWER:**  Invsco admits that it gave Plaintiffs notice of their violations of the Plaza 440 written guidelines, but denies that such notices were unwarranted, outrageous, or overly harsh. Invsco lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 48 regarding Admiral's termination of two of the Plaintiffs, and therefore demands strict proof thereof.  Invsco denies each and every remaining allegation in Paragraph 48.

49.     By reason of Defendant Invsco's discrimination against Plaintiffs Smith, Terry, and Brown, said Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

**ANSWER:**  Denied.

50.    Further, said actions on the part of Defendant Invsco were intentional and willful conduct, giving rise to punitive damages.

**ANSWER:**  Denied.

WHEREFORE, Defendant Invsco Group, Ltd. respectfully requests that

this Court dismiss the Second Amended Complaint with prejudice in its

entirety and for such other relief as this Court deems necessary and just.

### AS AND FOR A FIFTH CAUSE OF ACTION

(Title VII - racial harassment and hostile work environment)
(brought by Plaintiffs Smith, Terry, and Brown
against Defendant Invsco)

51.    Plaintiffs Smith, Terry, and Brown repeat and reallege each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

**ANSWER:**  Invsco repeats and realleges its responses to the paragraphs

above as if fully set forth herein.

52.    Defendant Invsco has intentionally harassed Plaintiffs Smith, Terry and Brown based upon their race and created a hostile work environment, in the terms and conditions of their employment, in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses, and threats; being subjected to poorer. and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and the Condo Assoc., and with two of the Plaintiffs having thus far also been terminated from Admiral); and more, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

**ANSWER:**  Invsco admits that it gave Plaintiffs notice of their violations

of the Plaza 440 written guidelines, but denies that such notices were

unwarranted, outrageous, or overly harsh. Invsco lacks sufficient

knowledge to form a belief as to the truth of the allegations in Paragraph

52 regarding Admiral's termination of two of the Plaintiffs, and therefore

demands strict proof thereof. Invsco denies each and every remaining

allegation in Paragraph 52.

53.    By reason of Defendant Invsco's discrimination against
Plaintiffs Smith, Terry, and Brown, said Plaintiffs have suffered a loss of
earnings and benefits, in addition to suffering great pain, humiliation
and mental anguish, all to their damage.

**ANSWER:**  Denied.

54.    Further, said actions on the part of Defendant Invsco were
intentional and willful conduct, giving rise to punitive damages.

**ANSWER:**  Denied.

WHEREFORE, Defendant Invsco Group, Ltd. respectfully requests that

this Court dismiss the Second Amended Complaint with prejudice in its

entirety and for such other relief as this Court deems necessary and just.

### AS AND FOR A SIXTH CAUSE OF ACTION

(Title VII -retaliation)
(brought by Plaintiffs Smith, Terry, and Brown
against Defendant Invsco)

55.    Plaintiffs Smith, Terry, and Brown repeat and each and every
allegation set forth above with the same force and effect as if more fully
set forth hereat.

**ANSWER:**  Invsco repeats and realleges its responses to the paragraphs

above as if fully set forth herein.

56.    Defendant Invsco has intentionally retaliated against
Plaintiffs Smith, Terry and Brown based upon their internal and external

complaints of racial discrimination (and based on their support of the discrimination complaints of the other black Doormen), in the terms and conditions of their employment in connection with, inter alia: being repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses, and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and the Condo Assoc., and with two of the Plaintiffs having thus far also been terminated from Admiral); and more, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq., as amended by, inter alia, the Civil Rights Act of 1991.

**ANSWER:**    Invsco admits that it gave Plaintiffs notice of their violations

of the Plaza 440 written guidelines, but denies that such notices were

unwarranted, outrageous, or overly harsh. Invsco denies that it issued

such notices in retaliation of any external or internal complaint as the

majority of the notices were issued prior to any complaints.  Invsco

affirmatively states that Plaintiffs' internal complaint does not mention or

give Invsco any reason to believe that Plaintiffs suffered from any race-

based discrimination—indeed, the only complaint filed at the time of

Plaintiffs' internal complaint was that of Perry Moon, which complained

of age discrimination and did not allege any discrimination based on

race.[2] Invsco specifically denies that it terminated its employment of

Plaintiffs in retaliation of any external complaint.  Indeed, all but one

external complaint was filed after Plaintiffs were given notice of the

change in employers. Invsco lacks sufficient knowledge to form a belief

as to the truth of the allegations in Paragraph 56 regarding Admiral's

termination of two of the Plaintiffs, and therefore demands strict proof

thereof. Invsco denies each and every remaining allegation in Paragraph

56.

57.     By reason of Defendant Invsco's retaliation against Plaintiffs
Smith, Terry, and Brown, said Plaintiffs have suffered a loss of earnings
and benefits, in addition to suffering great pain, humiliation and mental
anguish, all to their damage.

**ANSWER:**   Denied.

58.     Further, said actions on the part of Defendant Invsco were
intentional and willful conduct, giving rise to punitive damages.

**ANSWER:**   Denied.

WHEREFORE, Defendant Invsco Group, Ltd. respectfully requests that

this Court dismiss the Second Amended Complaint with prejudice in its

entirety and for such other relief as this Court deems necessary and just.

## AS AND FOR A SEVENTH CAUSE OF ACTION

(Title VII -retaliation)
(brought by Plaintiffs Terry and Brown against Defendant Admiral)

59.     Plaintiffs Terry and Brown repeat and each and every
allegation set forth above with the same force and effect as if more fully
set forth

60.     Defendant Admiral has intentionally retaliated against
Plaintiffs Terry and Brown based upon their internal and external
complaints of racial discrimination (and based on their support of the
discrimination complaints of the other black Doormen), in terms and
conditions of their employment, in connection with, inter alia: being

---

[2] Moon's complaint was dismissed on or about June 15, 2007, when Moon submitted a written request to
withdraw the charge.

repeatedly issued unwarranted, outrageous, and overly harsh disciplines; being subjected to repeated verbal hostilities, abuses and threats; being subjected to poorer, and changed, shift times, schedules and fill-in opportunities; being subjected to restrictions on outside work opportunities; having new requirements added to the Plaintiffs' continuing their employment; having additional, more difficult, and demeaning restrictions and conditions placed on the Plaintiffs' performance of their employment and on their workday; and in the Defendants' termination of the Plaintiffs' employment (with all of the Plaintiffs having been terminated from Invsco and the Condo Assoc., and with two of the Plaintiffs having thus far also been terminated from Admiral); and more, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000-e et seq., as amended by, inter alia, the Civil Rights Act of 1991.

61.     By reason of Defendant Admiral's retaliation against Plaintiffs Terry and Brown, said Plaintiffs have suffered a loss of earnings and benefits, in addition to suffering great pain, humiliation and mental anguish, all to their damage.

62.     Further, said actions on the part of Defendant Admiral were intentional and willful conduct, giving rise to punitive damages.

**ANSWER:**     Paragraphs 59-62 are not directed toward Invsco and therefore, an answer on behalf of Invsco is not appropriate.

AFFIRMATIVE DEFENSES

1.     Plaintiffs have failed to state a claim against Invsco pursuant to 42 U.S.C. § 1981.

2.     Plaintiffs have failed to state a claim against Invsco for punitive damages.

3.     Plaintiff Terry has failed to state a claim against Invsco under Title VII because the EEOC did not issue Terry a letter giving him the right to sue Invsco.

4.     Plaintiffs have failed to state any retaliation claims against Invsco because Plaintiffs' alleged letter complaining of discrimination neither

mentions nor refers to race-based discrimination, and is therefore not protected.

5.     Plaintiffs' claims against Invsco must be dismissed because Invsco exercised reasonable care to prevent and to promptly correct any alleged discriminatory conduct in its workplace.

6.     Plaintiffs' claims against Invsco must be dismissed because Plaintiffs unreasonably failed to take advantage of the preventive and corrective opportunities provided by Invsco, or to avoid their alleged harm otherwise.

7.     Plaintiffs' claims are barred to the extent that Plaintiffs failed to timely and properly exhaust all necessary administrative, statutory and/or jurisdictional prerequisites for the commencement of this action.

8.     Plaintiff Smith's retaliation claims in Plaintiffs' Sixth Cause of Action must be dismissed because it exceeds the scope of Smith's allegations in his EEOC Complaint.

9.     Plaintiff Terry's retaliation claims in Plaintiffs' Sixth Cause of Action must be dismissed because it exceeds the scope of Smith's allegations in his EEOC Complaint.

10.     Plaintiffs' claims must be dismissed as to Invsco because Invsco did not aid, abet, ratify, condone, encourage or acquiesce in any alleged discriminatory conduct.

11.     Plaintiffs Terry's and Brown's claims are barred to the extent that each has failed to mitigate such alleged damages.

34

12.    Invsco employs less than 500 employees, so Plaintiffs' Title VII claims can be no greater than $200,000 in compensatory and punitive damages pursuant to 42 USC § 1981a(b)(3)(C).

13.    Plaintiffs are not entitled to punitive damages because Invsco at no time engaged in willful discriminatory conduct within the meaning of the statute and at no time engaged in any discriminatory practice or practices with malice or reckless indifference to Plaintiffs' rights.

WHEREFORE, Defendant Invsco Group, Ltd. respectfully requests that this Court dismiss the Second Amended Complaint with prejudice in its entirety and for such other relief as this Court deems necessary and just.

Respectfully Submitted,

June 10, 2008

By:___/s/ Kristi L. Brown____
Kristi L. Browne

Thomas E. Patterson (3128587)
Kristi L. Browne (6195553)
Attorneys for Defendant Invsco, Group, Ltd.
The Patterson Law Firm, P.C.
33 N. LaSalle, Suite 3350
Chicago, Illinois 60602
(312) 223-1699